FILED
2018 Dec-13  PM 02:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

THE ALABAMA STATE CONFERENCE
OF THE NAACP, ERIC CALHOUN and
JENNIFER FORD,

        *Plaintiffs*,

  v.

CITY OF PLEASANT GROVE; JERRY
BRASSEALE, in his official capacity as
Mayor of the City of Pleasant Grove,
Alabama; and WILLIAM BULLION,
JAMES CRUMPTON, KENNETH
HATFIELD, PHILIP HOUSTON, and
PAULA JOHNSON, in their official
capacities as members of the City Council
for the City of Pleasant Grove, Alabama,

        *Defendants*.

COMPLAINT

Civil Case No. _____

## INTRODUCTION

1.  This case challenges the at-large method of electing members to the City Council for the City of Pleasant Grove, Alabama (the "City" or the "City Council") because it violates the Fourteenth and Fifteenth Amendments to the United States Constitution and Section 2 of the Voting Rights Act of 1965 ("Section 2"). 52 U.S.C. § 10301. These violations are established, in part, because (1) the Black voting-age population of the City is sufficiently numerous and geographically compact to form a majority of the voting-age population in at least three single-

1

member City Council districts; (2) Black voters are politically cohesive in City Council elections; (3) white voters tend to vote as a bloc against candidates preferred by Black voters, resulting in no Black candidate ever having won an election for a City Council seat; (4) Defendants continue to employ numbered place laws that a federal court has held to be unconstitutional and that, along with other structures, enhance the discriminatory nature of its at-large elections; and (5) Defendants have maintained an at-large method of election to deny Black voters an equal opportunity to participate in the political process and to elect representatives of their choice.

2.      Plaintiffs seek to enjoin Defendants' at-large method of election and thus to eliminate a system that results in racial discrimination and was adopted or is maintained for the purpose of diluting the voting strength of Black voters in the City.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this private action pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1357; 42 U.S.C. §§ 1983 and 1988; and 52 U.S.C. §§ 10301, 10302, 10308(f), and 10310(e).

4.      This Court can grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

5.      This Court has personal jurisdiction over Defendants, all of whom are located in Alabama.

6.     Venue is proper in the Northern District of Alabama under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

7.     Plaintiff the Alabama State Conference of the National Association for the Advancement of Colored People (the "Alabama NAACP") is a state subsidiary of the National Association for the Advancement of Colored People, Inc. The Alabama NAACP is the oldest and one of the most significant civil rights organizations in Alabama. The Alabama NAACP works to ensure the political, educational, social, and economic equality of Black Americans and all other Americans. The goals of the Alabama NAACP are to eliminate racial discrimination in the democratic process, and to enforce federal laws and constitutional provisions securing civil and voting rights. Toward those ends, the Alabama NAACP regularly engages in efforts to register, educate, and advocate on behalf of Black voters.

8.     The Alabama NAACP's membership includes Black residents of the City whose voting strength is currently diluted in violation of Section 2. Members of the Alabama NAACP reside in areas of the City that could constitute a single-member district with a majority-Black voting-age population that, if established, would remedy the identified Section 2 and constitutional violations.

9.      Plaintiff Alabama NAACP has diverted its limited resources from its other goals to advocate that Defendants voluntarily changing their discriminatory at-large method of election.

10.     Plaintiff Mr. Eric Calhoun is a Black registered voter and a resident of the City. Mr. Calhoun has lived and voted in the City for over twenty years. Defendants' use of at-large elections for the City Council, in combination with the numbered place laws, racially polarized voting, and other practices, has denied or abridged Mr. Calhoun's right to the equal opportunity to participate in the political process and elect his preferred representatives to the City Council. Mr. Calhoun resides in an area of the City that could constitute a single-member district with a majority-Black voting-age population that, if established, would remedy the identified Section 2 and constitutional violations.

11.     Plaintiff Ms. Jennifer Ford is a Black registered voter and a resident of the City. Ms. Ford has lived and voted in the City for five years. Defendants' use of at-large elections for the City Council, in combination with the numbered place laws, racially polarized voting, and other practices, has denied or abridged Ms. Ford's right to the equal opportunity to participate in the political process and elect her preferred representatives to the City Council. Ms. Ford resides in an area of the City that could constitute a single-member district with a majority-Black voting-age

population that, if established, would remedy the identified Section 2 and constitutional violations.

12.     Defendant the City of Pleasant Grove is a geographical and political subdivision in Jefferson County, Alabama. The City Council is the governing authority of the City and its members are elected at-large. Ala. Code § 11-43-43. The City Council provides local government services and has legislative power to adopt ordinances affecting its municipal affairs. The City has the independent authority to adopt single-member districts for its elections. Ala. Code § 11-43-63.

13.     Defendants William Bullion, James Crumpton, Kenneth Hatfield, Philip Houston, and Paula Johnson are the current members of the City Council, who are sued in their official capacities. Defendants are charged with ensuring the City's compliance with the United States Constitution and Section 2. The City Council has the independent authority to adopt single-member districts for its elections. Ala. Code § 11-43-63.

14.     Defendant Jerry Brasseale is sued in his official capacity as Mayor. As the "chief executive officer" of the City, Mayor Brasseale has the discretion to vote as a member of the City Council on any question coming to a vote and to execute an ordinance that could change the City Council's method of election. Ala. Code § 11-43-2.

# FACTUAL ALLEGATIONS

## A. The City Council and its Method of Election

15.     According to the 2010 Census, the total population of the City is 10,110 people. Of this total population, 5,427 (53.7%) are white and 4,534 (44.8%) are Black.

16.     All five members of the City Council and the Mayor are elected at-large.

17.     Each of the five members of the City Council is elected from one of five numbered places (One, Two, Three, Four, and Five). Ala. Code § 11-43A-32.

18.     The members of the City Council serve four-year, non-staggered terms, with an election occurring every four years. Elections are non-partisan. The last City Council election was in 2016.

19.     Candidates to the City Council must win by a majority vote. Ala. Code § 11-46-55.

20.     Mayor Brasseale and all the members of the City Council are white. Defendant Houston represents Place One; Defendant Crumpton represents Place Two; Defendant Hatfield represents Place Three; Defendant Johnson represents Place Four; Defendant Bullion represents Place Five.

21.     No Black candidate has ever been elected to the City Council.

22.     No Black candidate has ever been elected Mayor.

**B. Section 2 of the Voting Rights Act**

23.     Section 2 prohibits Defendants from enforcing any "voting qualification or prerequisite to voting or standard, practice, or procedure" that results in the denial or abridgment of the right to vote "on account of race or color." 52 U.S.C. § 10301(a). Discriminatory intent is not required to establish a Section 2 violation: Plaintiffs can "either prove such intent, or, alternatively, must show that the challenged system or practice, in the context of all the circumstances in the jurisdiction in question, results in minorities being denied equal access to the political process." *Chisom v. Roemer*, 501 U.S. 380, 394 & n.21 (1991) (citation omitted).

24.     Section 2 prohibits vote dilution: the use of electoral schemes, like at-large voting, that minimize or cancel out Black voting strength and otherwise deny or abridge Black voters' right to an equal opportunity to participate in the political process and elect representatives of their choice. 52 U.S.C. §10301(b).

25.     Defendants' at-large election system for the City Council violates Section 2 because it has the purpose or result of denying or abridging the rights of Black voters to have an equal opportunity to participate in the political process and elect representatives of their choice. 52 U.S.C. §10301(b).

## C. The *Gingles* Preconditions

26.     In *Thornburg v. Gingles*, the U.S. Supreme Court identified three preconditions, each of which Plaintiffs satisfy, necessary for a claim that a voting practice results in an actionable vote dilution claim under Section 2: (1) the minority group must be "sufficiently large and geographically compact to constitute a majority in a single-member district," (2) the minority group must be "politically cohesive," and (3) the majority must vote "sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." 478 U.S. 30, 50-51 (1986).

27.     The Black voting-age population in the City is sufficiently numerous and geographically compact to allow for the creation of three properly apportioned single-member districts for the City Council in which Black voters would constitute a majority of both the total population and the voting-age population. *See* Exhibits A, B, C.

28.     Elections in the City are racially polarized. Although Black voters are politically cohesive, bloc voting by the white electorate routinely defeats Black-preferred candidates.

29.     The 2016 elections demonstrate how white bloc voting in the City has operated and still operates to defeat Black-preferred candidates. Ms. Priscilla McWilliams, a Black woman, was appointed to the City Council to fill a vacancy in October 2014, but she was never elected to that position. In 2016, when Ms.

McWilliams ran as an incumbent to retain her seat on the City Council, she lost to a white candidate. The appointment of one Black person to the City Council "certainly does not demonstrate the ability of black voters to elect officials," particularly in the face of her subsequent loss to a white person. *United States v. Marengo County Commission*, 731 F.2d 1546, 1572 (11th Cir. 1984).

30.     In 2016, four other Black candidates, Audrey Rutledge Boles, Yolanda Lawson, Maria McKinney, and Robert Sellers, also lost to white candidates in racially polarized elections for Mayor and City Council.

31.     In 2008, Veda Agee, a Black candidate, ran unsuccessfully for Mayor. Sherian Minor, a Black candidate, ran unsuccessfully for Place 4. Angela Lewis, another Black candidate, lost the race for Place 2. Each of these Black candidates for Mayor and City Council lost to white candidates in racially polarized elections.

**D. The Totality of Circumstances**

32.     Section 2 requires an analysis of the "totality of the circumstances" to determine whether Black voters in the City "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b).

33.     In addition to satisfying the *Gingles* preconditions, the totality of the circumstances here also demonstrate that method of electing the City Council is not equally open to participation by Plaintiffs and the other Black voters in the City. *Id.*

9

34.     The City has an extensive history of racial discrimination in voting, education, housing, and other areas. *See, e.g., Wheeler v. City of Pleasant Grove*, 664 F. 2d 99 (5th Cir. 1981); *Stout v. Jefferson Cty. Bd. of Educ.*, 466 F.2d 1213 (5th Cir. 1972). In 1985, a three-judge district court ruled that the City has an "astonishing hostility to the presence and the rights of black Americans" and explained that:

> From the 1940s to the present, Pleasant Grove's housing and zoning policies have been designed to exclude blacks from the City. This was done either directly or through its efforts to exclude apartment construction (in the belief that apartment housing was likely to be occupied by blacks). Moreover, Pleasant Grove has managed to maintain an all-white residential community by operating a dual white-black housing market through a variety of devices, such as advertising and marketing directed exclusively to white buyers, and racial steering.
>
> Pleasant Grove has likewise made clear its policy of hostility to the presence of blacks in subjects other than housing. The City has never hired a black person, preferring to draw its employees from as far away as fifty miles rather than to hire blacks living in surrounding Jefferson County, which is one-third black. When a federal court in 1969 required the County to abandon its segregated school system, Pleasant Grove voted to secede from the county school system on the evening of the very day the court's order was issued. The City established its own separate "white" school system, financing it with extraordinary taxes, and funds diverted from the municipal utility system. These actions, and others, demonstrate that the City of Pleasant Grove has attempted to exclude blacks from becoming residents of the City and all facets of City life, including voting in municipal elections, and that it has, in fact, succeeded in doing so.

*City of Pleasant Grove v. United States*, 623 F. Supp. 782, 787-88 (D. D.C. 1985) (three-judge court).

35.     In 1987, the Supreme Court of the United States affirmed the three-judge court's ruling that the City had engaged in intentional racial discrimination against Black voters in violation of Section 5 of the Voting Rights Act by selectively annexing white communities but refusing to annex similar unincorporated Black communities. *City of Pleasant Grove v. United States*, 479 U.S. 462, 469 (1987). The Supreme Court found that "[city] officials have shown unambiguous opposition to racial integration, both before and after the passage of the federal civil rights laws." *Id.* at 465.

36.     The City is located in Jefferson County and the State of Alabama. The history of state-sponsored and private racial discrimination in Jefferson County and statewide is well-documented.

37.     For example, the Jefferson County Board of Education, which governs the City's schools, remains subject to a desegregation order. *Stout v. Jefferson Cty. Bd. of Educ.*, 882 F. 3d 988, 993 (11th Cir. 2018). The Jefferson County Personnel Board is the principal civil service agency for persons employed by, or seeking employment with, the City, as well as with Jefferson County and 21 other local cities. *United States v. Jefferson County*, No. CV-74-S-17-S, 2013 WL 4482970, at *6 n.19 (N.D. Ala. Aug. 20, 2013). In 2013, the Personnel Board was held in contempt for its "thirty-year pattern of intentional, willful disobedience of th[e] court's orders"

11

because the Board was found to have violated a consent decree meant to remedy discrimination against Black employees and applicants for employment. *Id*. at *53.

38.    In 1986, a federal district court found that the Alabama Legislature purposefully changed the state laws governing at-large elections for county and city governments throughout Alabama to require the use of numbered places to prevent Black voters from electing candidates of their choice. *See Dillard v. Crenshaw County*, 640 F. Supp. 1347, 1356-60 (M.D. Ala. 1986); *see also Dillard*, 649 F. Supp. 289, 294 (M.D. Ala. 1986), *aff'd* 831 F.2d 246, 250 (11th Cir. 1987). Based on these findings, the district court expanded the *Dillard* litigation to include a defendant class of 19 county commissions, 30 county school boards, and 148 municipalities who were then employing at-large methods of election tainted by the racially motivated numbered place laws. While not a part of the *Dillard* defendant class, the City continues to operate under these racially tainted numbered place laws.

39.    At different points in history, the State of Alabama has also used poll taxes, literacy tests, felony disfranchisement laws, and discriminatory redistricting schemes to restrict the access of Black voters to the franchise. *See*, *e.g.*, *Ala. Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257 (2015); *Hunter v. Underwood*, 471 U.S. 222 (1985); *United States v. McGregor*, 824 F. Supp. 2d 1339, 1347 (M.D. Ala. 2011) (collecting cases). Because of this history, Alabama and the City were subject to the preclearance requirement under Section 5 of the Voting Rights Act

from 1965 until 2013. Since 1982, the U.S. Department of Justice has objected to 48 voting changes in Alabama as having the purpose or effect of racial discrimination. U.S. Dep't of Justice, Civil Rights Div., Voting Determination Letters in Ala., http://www.justice.gov/crt/voting-determination-letters-alabama (last visited Dec. 13, 2018).

40.    As referenced above at ¶¶ 28-31, voting in the City is racially polarized.

41.    The City employs several practices and procedures that enhance the opportunity for discrimination against Black voters in the City Council elections. The City's at-large method of election includes majority-vote requirements, an unusually large election district, and intentionally racially discriminatory numbered-place requirements.

42.    Majority-vote and numbered-place requirements dilute the vote of Black people in the City because Black-preferred candidates for City Council, even with cohesive support from Black voters, cannot win a majority of the total vote in at-large elections without white crossover voting, which does not occur in a meaningful level.

43.    Black residents of the City bear the effects of discrimination in such areas as education, employment, and health, which hinder their ability to participate effectively in the political process. The City's at-large method of election interacts

13

with these social and historical conditions to undermine the ability of the Black citizens in the City to participate equally in the political process.

44.   No Black candidate has ever been elected to the City Council.

45.   Unless enjoined by order of this Court, Defendants will continue to violate Section 2 by conducting future elections under its at-large electoral system with numbered post requirements.

### E. The At-Large Method of Election and Numbered Place Laws were Adopted or are Maintained for a Racially Discriminatory Purpose

46.   In violation of Section 2 and the U.S. Constitution's Fourteenth and Fifteenth Amendments, the City's at-large method of election and the corresponding numbered place requirements were adopted or are maintained for the purpose of diluting the votes of Black voters residing in the City.

47.   As described in ¶ 38 above, "the State of Alabama enacted numbered place laws with the specific intent of making local at-large systems, including those used in [the City Council] elections, more effective and efficient tools for keeping black voters from electing black candidates." *Dillard*, 640 F. Supp. at 1356. The City still operates under this intentionally racially discriminatory state law and therefore the City's at-large method of election with numbered places is also unconstitutional.

48.   Alabama law provides that "[a]ny city or town council of this state not currently electing its members from single-member districts pursuant to state law may, not less than six months prior to the regular general municipal election, by

ordinance adopted by a majority of the membership of the council, divide the municipality into single-member districts (wards) of not less than five nor more than seven districts (wards)." Ala. Code § 11-43-63.

49.     Plaintiffs and other members of the City's Black community have advocated for the adoption of single-member districts to resolve the identified Section 2 and constitutional violations. For example, on March 22, 2018, the Alabama NAACP and several Black residents of the City sent a letter to Defendants urging them to change the method of electing the City Council from at-large to single-member districts in which Black voters comprise a majority of the voting-age population in several districts. Since then, Plaintiffs and several Black residents have repeatedly met with Defendants in good faith and advocated that they adopt single-member districts for the City Council that comply with applicable federal and state laws. Despite these efforts, Defendants have failed to use their authority to adopt single-member districts.

50.     Defendants' stated rationales for maintaining the at-large method of electing City Council members are tenuous or pretexts for intentional racial discrimination. For example, one of Defendants' stated purposes for refusing to act is a desire to protect white incumbent City Council members. Plaintiffs have presented demonstrative maps to Defendants that both contain majority-Black single-member districts and that do not place any of the current incumbents in the

same single-member district. Yet, Defendants have refused to adopt these maps or alternative single-member districts.

51.     While the protection of incumbents can be a legitimate interest, where, as here, incumbent protection is used to justify the maintenance of an election scheme because Defendants perceive Black voters as being more likely to vote against white incumbents, then incumbent protection is evidence of intentional racial discrimination. *See League of United Latin American Citizens v. Perry*, 548 U.S. 399, 441 (2006); *Clark v. Putnam County*, 293 F.3d 1261, 1271-72 (11th Cir. 2002).

52.     Defendants have maintained at-large elections even though, following advocacy or litigation in the *Dillard* cases, nearly all other local governments in Alabama with a Black population over 20% now use single-member districts or alternative methods of election that comply with Section 2 and the U.S. Constitution.

53.     Defendants' purported rationales cannot overcome the fact that the at-large elections have consistently yielded and maintained an all-white City Council.

54.     Together, these facts, as well as the totality of the circumstances described above at ¶¶ 33-44, individually and collectively show the intentionally racially discriminatory nature of the perpetuation of the City's at-large elections.

55.     The City's history and ongoing record of intentional racial discrimination in voting make clear that preclearance review under Section 3(c) of

the Voting Rights Act is warranted to safeguard the rights of Black voters and to enforce the voting guarantees of the U.S. Constitution. 52 U.S.C. § 10302(c).

## CLAIMS FOR RELIEF

56.     Plaintiffs hereby re-allege and incorporate by reference ¶¶ 1–55 above.

57.     Under the totality of circumstances, the City's at-large election system for electing the City Council has the result of diluting of Black voting strength and denies or abridges the rights of Plaintiffs and Black voters to an equal opportunity to participate in the political process and elect representatives of their choice in violation of Section 2 of the Voting Rights Act. 52 U.S.C. §§ 10301, 10302.

58.     Under the totality of circumstances, the City's at-large election system for electing the City Council, including the numbered place requirements, were adopted or are being maintained by the City or the Alabama Legislature for the purpose of diluting of the strength of Black voters, including Plaintiffs, in violation of the Fourteenth and Fifteenth Amendments to the U.S. Constitution and Section 2. 52 U.S.C. §§ 10301, 10302; 42 U.S.C. § 1983; U.S. Const. amend. XXIV, XXV.

59.     Unless enjoined by this Court, Defendants will continue to violate the Voting Rights Act and the United States Constitution by conducting City Council elections employing a racially discriminatory and unconstitutional at-large method of election that includes unconstitutional numbered place requirements.

## **PRAYER FOR RELIEF**

60.     WHEREFORE, Plaintiffs respectfully pray that the Court enter an order:

     a.  Declaring that the City's at-large method of electing members of the City Council violates Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the U.S. Constitution;

     b.  Enjoining Defendants, their agents and successors in office, and all persons acting in concert with, or as an agent of, any Defendants in this action, from administering, implementing, or conducting any future elections in the City under the current at-large method of electing the members of the City Council;

     c.  Ordering the City to adopt single-member districts or another new method of election for members of the City Council that complies with Section 2 and the United States Constitution;

     d.  Retaining jurisdiction over this action pursuant to Section 3(c) of the Voting Rights Act and requiring the City to obtain preclearance through a determination from this Court or the U.S. Department of Justice that any proposed changes related to voting impacting any elections in the City do not have the purpose or effect of denying or abridging the right to vote based on race, 52 U.S.C. § 10302(c);

e.  Ordering Defendants to pay Plaintiffs' costs, expenses, and other reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e); and

f.  Ordering any such additional relief as the interests of justice may require.

Respectfully submitted on December 13, 2018,

/s/ Deuel Ross
Sherrilyn Ifill
  *President and Director-Counsel*
Samuel Spital*
Leah C. Aden*
Deuel Ross*
NAACP LEGAL DEFENSE AND
  EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
Phone: (212) 965-2200
Fax: (212) 226-7592
sspital@naacpldf.org
laden@naacpldf.org
dross@naacpldf.org


/s/ Catherine Meza
Catherine Meza*
NAACP LEGAL DEFENSE AND
  EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
Phone: (202) 682-1300
Fax: (212) 226-7592
cmeza@naacpldf.org

/s/ James U. Blacksher
James U. Blacksher
Bar No. ASB-2381-S82J
P.O. Box 636
Birmingham, AL 35201
Phone: (205) 591-7238
Fax: (866) 845-4395
jblacksher@ns.sympatico.ca

*Pro Hac Vice Motions forthcoming*

# EXHIBIT A



## Population Summary Report

**Pleasant Grove, AL -- 8/01/18 Draft**

| District | Population | Deviation | % Deviation | Black | % Black | AP Black | % AP Black |
|----------|-----------|-----------|-------------|-------|---------|----------|-----------|
| 1 | 1947 | -75 | -3.71% | 1063 | 54.60% | 1077 | 55.32% |
| 2 | 1934 | -88 | -4.35% | 1122 | 58.01% | 1126 | 58.22% |
| 3 | 2063 | 41 | 2.03% | 1145 | 55.50% | 1148 | 55.65% |
| 4 | 2086 | 64 | 3.17% | 650 | 31.16% | 658 | 31.54% |
| 5 | 2080 | 58 | 2.87% | 554 | 26.63% | 557 | 26.78% |
| **Total** | **10110** | | | **4534** | **44.85%** | **4566** | **45.16%** |

**Total Deviation**     **7.52%**

| District | 18+_Pop | 18+_Black | % 18+ Black | 18+ AP Black | %18+ AP Black | 18+ Hisp. | % 18+ Hisp. | NH 18+ White | % NH 18+ White |
|----------|---------|-----------|-------------|--------------|---------------|-----------|-------------|--------------|----------------|
| 1 | 1481 | 750 | 50.64% | 753 | 50.84% | 4 | 0.3% | 716 | 48.35% |
| 2 | 1474 | 789 | 53.53% | 793 | 53.80% | 6 | 0.4% | 672 | 45.59% |
| 3 | 1563 | 789 | 50.48% | 790 | 50.54% | 10 | 0.6% | 751 | 48.05% |
| 4 | 1594 | 422 | 26.47% | 424 | 26.60% | 9 | 0.6% | 1155 | 72.46% |
| 5 | 1590 | 347 | 21.82% | 348 | 21.89% | 4 | 0.3% | 1214 | 76.35% |
| **Total** | **7702** | 3097 | **40.21%** | 3108 | **40.35%** | **33** | **0.43%** | **4508** | **58.53%** |

**EXHIBIT B**



Pleasant Grove, AL
Map Layers
Water Area
Streets
Council_Incumbents
0
.4
.8
1.2
Miles
Draft 8/02/18
1
2
3
4
5
council
council
council
council
council
Mayor
ASH DR
PINE GROVE RD
WEST ST
STEWART RD
BARBARA LN
ANNA CT
ARABIA AVE
JAVA AVE
HOLLAND AVE
INVERNESS ST
MEXICO AVE
KISKA AVE
JAVA ALY
ICELAND CT
BIRMINGPORT
YUKON2 ALY
XAVIER ALY
WHEELING ST
UTICA ALY
TRENTON ST
QUEBEC ST
PANAMA ST
NEW MULGA LOOP RD
LEXINGTON ST
OREGON ST
SLAYDEN AVE
7TH AVE
7TH CT
RAILROAD AVE
12TH AVE
13TH AVE
15TH AVE
HURON ST
PORTLAND ST
RICHMOND ST
TOLEDO ST
57TH ST
56TH ST
ENSLEY PLEASANT GROV
TIN MILL RD
VALLEY RD
GARDENIA CIR
DELTA PL
ALTAMONT DR
1ST PL
1ST WAY
2ND PL
2ND ALY
DOGWOOD LN
3RD ST
3RD CT
4TH ST
4TH PL
4TH WAY
CHURCH ALY
6TH AVE
4TH AVE
5TH PL
5TH WAY
JENNIFER PL
BROOKE LYN RD
PARK RD
ANNIE LN
8TH PL
8TH ST
3RD TER
4TH TER
6TH CT
8TH AVE
9TH AVE
9TH TER
10TH TER
10TH AVE
10TH ST
9TH WAY
PLEASANT GROVE RD
4TH CT
3RD AVE
3RD PLZ
1ST AVE
13TH ST
13TH WAY
14TH WAY
5TH AVE
WOODRIDGE PL
SMITHFIELD FOREST LN
SMITHFIELD FOREST DR
FIVE ACRE RD
RAILROAD ST
LOUIS ST
MORROW ST
BELL ALY
MCKNIGHT ST
BOOKER ST
WHITE ST
JACKSON ST
TIN MILL ALY
9TH CT
11TH PL
10TH CT
11TH AVE
12TH CT
11TH ST
12TH TER
6TH ST
7TH ST
7TH WAY
9TH ST
13TH CT
14TH AVE
12TH ST
13TH PL
14TH ST
16TH ST
CARDINAL CIR
HARLEM
CHERRY AVE
PINEWOOD AVE
PINEWOOD CT
CONCORD HIGHLAND
MC BEE DR
GAY RD
MOORES LN
VICTORY LN
ROCK CREEK RD
HIGGINS DR
LYNN DR
HOAGTOWN LOOP
AZZ HIGGINS DR
DREW AVE
POPULAR SPG DR
10TH RD S
REDBUD LN
PINE CIR
DOGWOOD DR
BEACH CIR
CEDAR DR
ELM LN
PARSONS DR
SYLVAN SPRINGS RD
WALNUT DR
OAK LN
HICKORY LN
GLASGOW RD
2ND AVE
OAKS

# Population Summary Report

**Pleasant Grove, AL -- 8/02/18 Draft**

| District | Population | Deviation | % Deviation | Black | % Black | AP Black | % AP Black |
|---|---|---|---|---|---|---|---|
| 1 | 1953 | -69 | -3.41% | 1149 | 58.83% | 1162 | 59.50% |
| 2 | 1950 | -72 | -3.56% | 1063 | 54.51% | 1067 | 54.72% |
| 3 | 1968 | -54 | -2.67% | 1104 | 56.10% | 1106 | 56.20% |
| 4 | 2119 | 97 | 4.80% | 679 | 32.04% | 687 | 32.42% |
| 5 | 2120 | 98 | 4.85% | 539 | 25.42% | 544 | 25.66% |
| **Total** | **10110** | | | **4534** | **44.85%** | **4566** | **45.16%** |
| **Total Deviation** | | | **8.41%** | | | | |

| District | 18+_Pop | 18+_Black | % 18+ Black | 18+ AP Black | %18+ AP Black | 18+ Hisp. | % 18+ Hisp. | NH 18+ White | % NH 18+ White |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1471 | 810 | 55.06% | 813 | 55.27% | 5 | 0.3% | 646 | 43.92% |
| 2 | 1487 | 744 | 50.03% | 748 | 50.30% | 6 | 0.4% | 729 | 49.02% |
| 3 | 1505 | 765 | 50.83% | 766 | 50.90% | 9 | 0.6% | 718 | 47.71% |
| 4 | 1613 | 437 | 27.09% | 439 | 27.22% | 9 | 0.6% | 1156 | 71.67% |
| 5 | 1626 | 341 | 20.97% | 342 | 21.03% | 4 | 0.3% | 1259 | 77.43% |
| **Total** | **7702** | 3097 | **40.21%** | 3108 | **40.35%** | **33** | **0.43%** | **4508** | **58.53%** |

**EXHIBIT C**



Pleasant Grove, AL
Map Layers
Districts:8
Water Area
Streets
Council_Incumbents
0
.4
.8
1.2
Miles
Draft 8/03/18
1
2
3
4
5
council
council
council
council
council
Mayor
ASH DR
PINE GROVE RD
WEST ST
STEWART RD
BARBARA LN
ANNA CT
ARABIA AVE
JAVA AVE
HOLLAND AVE
1ST CT
INVERNESS ST
KISKA AVE
JAVA ALY
ICELAND CT
BIRMINGPORT
YUKON2 ALY
XAVIER ALY
WHEELING ST
TRENTON ST
TRENTON ALY
QUEBEC ST
PANAMA ST
NEW MULGA LOOP RD
LEXINGTON ST
OREGON ST
GARDENIA CIR
DELTA PL
ALTAMONT DR
GLASGOW RD
BEACH CIR
CEDAR DR
PINE CIR
DOGWOOD DR
REDBUD LN
ELM LN
PARSONS DR
SYLVAN SPRINGS RD
WALNUT DR
OAK LN
HICKORY LN
POPULAR SPG DR
DREW AVE
10TH RD S
HOAGTOWN LOOP
AZZ HIGGINS DR
HIGGINS DR
LYNN DR
ROCK CREEK RD
1ST PL
1ST WAY
2ND PL
2ND WAY
2ND ALY
DOGWOOD LN
3RD ST
3RD CT
4TH ST
4TH WAY
CHURCH ALY
6TH AVE
4TH AVE
5TH PL
5TH WAY
9TH AVE
8TH AVE
9TH TER
6TH CT
6TH ST
7TH ST
7TH WAY
12TH TER
12TH AVE
10TH TER
7TH PL
8TH ST
4TH TER
3RD TER
8TH PL
PARK RD
BROOKE LYNN RD
JENNIFER PL
ANNIE LN
PLEASANT GROVE RD
9TH ST
9TH PL
9TH WAY
9TH CT
11TH ST
12TH CT
11TH AVE
10TH CT
8TH CT
4TH CT
4TH PLZ
3RD PLZ
3RD AVE
1ST AVE
13TH CT
14TH AVE
12TH ST
13TH PL
13TH ST
13TH WAY
14TH ST
14TH
14TH WAY
5TH AVE
16TH ST
SMITHFIELD FOREST LN
SMITHFIELD FOREST DR
WOODRIDGE PL
FIVE ACRE RD
RAILROAD ST
LOUIS ST
MORROW ST
BELL ALY
MCKNIGHT ST
BOOKER ST
WHITE S
JACKSON ST
TIN MILL ALY
TIN MILL RD
CARDINAL CIR
HARLEM
CHERRY AVE
PINEWOOD AVE
PINEWOOD CT
CONCORD HIGHLAND
MC BEE DR
GAY RD
VICTORY LN
MOORES LN
TOLEDO ST
57TH ST
56TH ST
RICHMOND ST
PORTLAND ST
7TH AVE
SLAYDEN AVE
7TH CT
RAILROAD AVE
10TH AVE
13TH AVE
15TH AVE
INDIANA ST
FRISCO ST
ENSLEY PLEASANT GROV
2ND AVE
OAKS

# Population Summary Report

### Pleasant Grove, AL -- 8/03/18 Draft

| District | Population | Deviation | % Deviation | Black | % Black | AP Black | % AP Black |
|---|---|---|---|---|---|---|---|
| 1 | 2013 | -9 | -0.45% | 1091 | 54.20% | 1101 | 54.69% |
| 2 | 1954 | -68 | -3.36% | 1081 | 55.32% | 1088 | 55.68% |
| 3 | 1942 | -80 | -3.96% | 1147 | 59.06% | 1149 | 59.17% |
| 4 | 2081 | 59 | 2.92% | 676 | 32.48% | 684 | 32.87% |
| 5 | 2120 | 98 | 4.85% | 539 | 25.42% | 544 | 25.66% |
| **Total** | **10110** | | | **4534** | **44.85%** | **4566** | **45.16%** |
| **Total Deviation** | | | **8.81%** | | | | |

| District | 18+_Pop | 18+_Black | % 18+ Black | 18+ AP Black | %18+ AP Black | 18+ Hisp. | % 18+ Hisp. | NH 18+ White | % NH 18+ White |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1547 | 775 | 50.10% | 778 | 50.29% | 6 | 0.4% | 752 | 48.61% |
| 2 | 1482 | 751 | 50.67% | 755 | 50.94% | 6 | 0.4% | 719 | 48.52% |
| 3 | 1466 | 795 | 54.23% | 796 | 54.30% | 8 | 0.6% | 651 | 44.41% |
| 4 | 1581 | 435 | 27.51% | 437 | 27.64% | 9 | 0.6% | 1127 | 71.28% |
| 5 | 1626 | 341 | 20.97% | 342 | 21.03% | 4 | 0.3% | 1259 | 77.43% |
| **Total** | **7702** | 3097 | **40.21%** | 3108 | **40.35%** | **33** | **0.43%** | **4508** | **58.53%** |