IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE ALABAMA STATE CONFERENCE OF THE NAACP, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) 2:18-cv-02056-LSC<br>) |
| CITY OF PLEASANT GROVE, *et al.*, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OF OPINION**

**I.    Introduction**

Plaintiffs, the Alabama State Conference of the NAACP ("the Alabama NAACP"), Eric Calhoun, and Jennifer Ford, bring this action against Defendants, City of Pleasant Grove ("Pleasant Grove"), Jerry Brasseale in his official capacity as Mayor of Pleasant Grove, and William Bullion, James Crumpton, Kenneth Hatfield, Phillip Houston, and Paula Johnson in their official capacities as Pleasant Grove City Council members (collectively "Defendants"). In their Complaint, Plaintiffs challenge the at-large method of electing members to Pleasant Grove's City Council.

Presently before the Court are Defendants' Motion to Dismiss (doc. 14), Motion to Stay (doc. 16), and Motion to Strike (doc. 27). For the reasons stated below, Defendants' Motion to Dismiss (doc. 14) is due to be GRANTED in PART and DENIED in PART. Defendants' Motion to Stay (doc. 16) and Motion to Strike (doc. 27) are due to be TERMINATED as MOOT.

## II.     Background[1]

Under Pleasant Grove's at-large election method, each of the five members of the Pleasant Grove City Council is elected from one of five numbered places. City Council members serve four-year, non-staggered terms, and candidates to the City Council must win by a majority vote. Although the 2010 Census indicates that 44.8% of Pleasant Grove's population is Black, no Black candidate has ever been elected to the Pleasant Grove City Council. In Pleasant Grove's most recent City Council elections, which took place in 2016, all four Black candidates for City Council lost to White candidates.

Plaintiffs' Complaint has four causes of action for which Plaintiffs seek relief. Plaintiffs first allege that the at-large method of electing Pleasant

---

[1]     In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court treats the facts alleged in the complaint as true and construes them in the light most favorable to the non-moving party. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012).

Grove City Council members violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, under either a results-only or intentional vote dilution theory of liability. Plaintiffs also allege that Pleasant Grove's at-large election method violates the Fourteenth and Fifteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983, *see* U.S. Const., amends. XIV & XV, 42 U.S.C. § 1983, because it was purposefully adopted, or is being maintained, to dilute the strength of Black voters. Plaintiffs request a declaratory judgment and an injunction enjoining the Defendants from continuing to conduct elections using the current at-large method of electing City Council members. Additionally, Plaintiffs ask that this Court require Pleasant Grove to adopt single-member districts or another permissible method of electing City Council members.

**III.    Standing**

As a threshold matter, the Court will address Defendants' argument that the Alabama NAACP does not having standing to bring this action. (*See* Doc. 15 at 41.)

**A.    Standard**

To establish standing under Article III of the Constitution, a plaintiff must allege (1) that it has suffered an actual or imminent "injury in fact," (2) that there is a "causal connection" between that injury and the conduct

complained of, and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561.

## B. Discussion

The Alabama NAACP has pled injuries sufficient to confer standing. An organizational plaintiff may establish standing in one of two ways. First, an organization's "diversion-of-resources" injury is sufficient to confer standing. *See, e.g., Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014). Second, an organization may enjoy standing as the representative of its members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

The Alabama NAACP has sufficiently alleged that it has standing as a representative of its constituents. According to the Complaint, the Alabama NAACP's membership includes Black residents of Pleasant Grove whose voting strength is currently diluted. (Doc. 1 ¶ 8.) The Complaint further

alleges that the Alabama NAACP's members include individuals who reside in areas of Pleasant Grove that could constitute a single-member district with a majority-Black voting-age population. (*See id.*) The Complaint goes on to state that "[t]he goals of the Alabama NAACP are to eliminate racial discrimination in the democratic process, and to enforce federal laws and constitutional provisions securing civil and voting rights." (*Id.* ¶ 7.) Thus, the Alabama NAACP has sufficiently alleged that: (1) its members would have standing to sue in their own right; and (2) that the interests at stake are germane to its organizational purpose. Because the Court finds that this case does not require participation by the Alabama NAACP's individual members, the Alabama NAACP may assert standing on behalf of its members. Accordingly, the Alabama NAACP need not also establish that it has standing in its own right under a "diversion-of-resources" theory of standing.

## IV. Failure to State a Claim

### A. Standard

A pleading must, in general, present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to withstand a motion to dismiss, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lord Abbett Mun. Income Fund, Inc. v. Tyson*,

671 F.3d 1203, 1207 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff need not put forth "detailed factual allegations" in support of the claim, but there must be enough to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

In evaluating the sufficiency of a complaint, this Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Next, this Court "assume[s] the veracity" of well-pleaded factual allegations to "determine whether they plausibly give rise to an entitlement to relief." *Id.* Only the complaint itself and any attachments thereto may be considered, even when the parties attempt to present additional evidence. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014); *see also* Fed. R. Civ. P. 12(d). Therefore, the Court did not consider any of the parties' evidentiary submissions when rendering this Opinion.[2]

---

[2] Accordingly, Defendants' Motion to Strike (doc. 27) is due to be terminated as moot.

### B. Mayor and City Council Members

The Mayor and City Council members argue that the claims against them should be dismissed because: (1) these claims are duplicative of the claims against Pleasant Grove; and (2) they are entitled to the defense of legislative immunity.

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, "[b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly . . . ." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Although most cases dismissing official capacity claims as duplicative of claims against a municipality involve identical § 1983 claims, courts within this Circuit have recognized that the same logic extends to official capacity claims brought under the Voting Rights Act. *See, e.g.*, *Lewis v. Bentley*, No. 2:16-CV-690-RDP, 2017 WL 432464, at *3 (N.D. Ala. Feb. 1, 2017), *rev'd on other grounds*, 896 F.3d 1282 (11th Cir. 2018), *reh'g en banc granted*, 914 F.3d 1291 (11th Cir. 2019).

Upon review of Plaintiffs' Complaint, the Court finds that the Plaintiffs' claims against the Mayor and City Council members are entirely duplicative of the claims against Pleasant Grove. Plaintiffs ask the Court to enjoin these Defendants and "their agents and successors in office . . . from administering, implementing, or conducting any future elections in the City under the current at-large method of electing the members of the City Council." (*See* Doc. 1 ¶ 60.) This action can be accomplished by allowing Plaintiffs' claims against Pleasant Grove to go forward. Although, as Plaintiffs point out, this case presents no risk of jury confusion, permitting Plaintiffs to pursue claims against both Pleasant Grove and the individual Defendants in their official capacities would be needlessly redundant. *See Busby*, 931 F.2d at 776.

Simply put, it is unnecessary for the Mayor and City Council members to remain in this case. Therefore, the Court concludes that both the constitutional and Voting Rights Act claims brought against them are due to be dismissed. Because the Court holds that the claims against the Mayor and City Council members are due to be dismissed for being duplicative of the claims against Pleasant Grove, it need not consider whether these Defendants are also entitled to the defense of legislative immunity.

## C. City of Pleasant Grove

### 1. Section 2 of the Voting Rights Act

Plaintiffs claim that Pleasant Grove's at-large election method violates Section 2 of the Voting Rights Act. Section 2 forbids any "standard, practice, or procedure" that "results in the denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a). To state a results-only Section 2 claim in a vote dilution case, such as this one, a plaintiff must allege: (1) he is a member of a minority group that is "sufficiently large and geographically compact to constitute a majority in a single-member district;" (2) the minority group is "politically cohesive;" and (3) "the white majority votes sufficiently as a bloc to enable it . . . to defeat the minority's preferred candidate." *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986). After satisfying these three *Gingles* preconditions, a plaintiff still must plausibly allege "that the totality of the circumstances results in an unequal opportunity for minority voters to participate in the political process and to elect representatives of their choosing as compared to other members of the electorate." *See Ga. State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1342 (11th Cir. 2015). "Courts use factors drawn from a report of the Senate Judiciary Committee

accompanying the 1982 amendments to the [Voting Rights Act] (the Senate factors) to make the totality-of-the-circumstances determination." *Id.*

Plaintiffs have sufficiently alleged facts plausibly demonstrating that the *Gingles* preconditions are satisfied. Citing data from the 2010 Census, Plaintiffs allege that 53.7% of Pleasant Grove's population is White and 44.8% is Black. (Doc. 1 ¶ 15.) Plaintiffs further allege that "[t]he Black voting-age population in the City is sufficiently numerous and geographically compact to allow for the creation of three properly apportioned single-member districts for the City Council in which Black voters would constitute a majority of both the total population and the voting-age population." (*Id.* ¶ 27.) Plaintiffs have attached three population summary reports and maps to their Complaint, which provide support for their contention that Pleasant Grove's Black voting-age population is in the minority. (*Id.* at Ex. A, B, C.) These exhibits also suggest that Pleasant Grove could draw three geographically compact single-member districts where the majority of the voting-age population would be Black. (*See id.*) Although Pleasant Grove urges the Court to take judicial notice of the fact that more recent U.S. Census surveys show that the majority of Pleasant Grove's population is now Black, the Court finds that whether Black voters actually constitute a majority

of Pleasant Grove's voting-age population is a matter more appropriately assessed in a ruling on a motion for summary judgment.[3]

Plaintiffs have also sufficiently alleged that Pleasant Grove's Black voters are "politically cohesive" and that Pleasant Grove's "white majority votes sufficiently as a bloc to enable it . . . to defeat the minority's preferred candidate." *Gingles*, 478 U.S. at 51. Plaintiffs have alleged that elections in Pleasant Grove are "racially polarized." (Doc. 1 ¶ 28.) Plaintiffs point to the 2008 and 2016 City Council elections as providing factual support for their allegations of racial polarization. (*See id.* ¶¶ 29–31.) Specifically, Plaintiffs allege that "[t]he 2016 elections demonstrate how white bloc voting in [Pleasant Grove] has operated and still operates to defeat Black-preferred candidates." (*Id.* ¶ 29.) According to Plaintiffs, in the racially polarized 2016 election, all four Black candidates for City Council lost to White candidates. (*Id.* ¶¶ 21, 29–30.) Plaintiffs state that in 2008 the two Black candidates for City Council lost to White candidates in elections that were also racially polarized. (*Id.* ¶¶ 21, 31.) Accepting these allegations as true, Plaintiffs have sufficiently pled that the *Gingles* preconditions are satisfied.

---

[3]  As such, the Court makes no determination on the merits of Pleasant Grove's argument that a racial group that constitutes the majority of the total population, voting-age population, and registered-voter population of a political subdivision cannot bring a Section 2 vote dilution claim.

The Court next turns to the totality of the circumstances analysis. After considering the totality of the circumstances alleged and the relevant Senate factors, the Court concludes that Plaintiffs have plausibly alleged that Pleasant Grove's Black voters "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *See* 52 U.S.C. § 10301(b). Two of the most important Senate factors are "the existence of racially polarized voting" and "the extent to which minorities are elected to public office." *See Clark v. Calhoun Cty., Miss.*, 88 F.3d 1393, 1397 (5th Cir. 1996). Here, Plaintiffs have alleged: (1) that no Black candidate has ever been elected to the Pleasant Grove City Council (doc. 1 ¶ 21); and (2) that the 2008 and 2016 City Council elections were voted on along racial lines (*id.* ¶¶ 28–31). Accordingly, Pleasant Grove's motion to dismiss Plaintiffs' Section 2 results-only claim is due to be denied.

2. Fourteenth Amendment

Plaintiffs also claim that Pleasant Grove's at-large election method violates the Equal Protection Clause of the Fourteenth Amendment. "[T]o establish a constitutional vote dilution claim, Plaintiffs must show that: (1) [Pleasant Grove's] black population lacks an equal opportunity to participate in the political process and elect candidates of its choice; (2) this inequality

of opportunity results from [Pleasant Grove's] at-large voting scheme; and (3) a racially discriminatory purpose underlies [Pleasant Grove's] voting scheme." *Johnson v. DeSoto Cty. Bd. of Comm'rs*, 204 F.3d 1335, 1345 (11th Cir. 2000) ("*Desoto II*").

The allegations discussed in section IV. C. 1., *supra* provide sufficient factual support for the first two elements of Plaintiffs' Fourteenth Amendment claim to survive 12(b)(6) scrutiny. These allegations essentially state that Pleasant Grove's Black population, which constitutes a minority of the voting-age population, cannot elect its preferred candidates to the City Council due to the at-large election method. Based on these allegations, it is plausible that the single-member districts proposed by Plaintiffs would provide Pleasant Grove's Black population with better access to the political process. As stated above, it would be inappropriate at the pleadings stage for the Court to consider contradictory evidence presented by Pleasant Grove. Additionally, after reviewing Plaintiffs' Complaint as well as the factors set forth by the Supreme Court for finding intent in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266–68 (1977), the Court finds that Plaintiffs' allegations of discriminatory intent are

sufficient. Thus, Pleasant Grove's motion to dismiss the Fourteenth Amendment claims against it is due to be denied.[4]

    3.     Fifteenth Amendment

In contrast to their Section 2 and Fourteenth Amendment claims against Pleasant Grove, Plaintiffs' Fifteenth Amendment claims are due to be dismissed. Vote dilution is not a cognizable claim under the Fifteenth Amendment. *See Osburn v. Cox*, 369 F.3d 1283, 1288 (11th Cir. 2004) ("The Supreme Court has recognized that the Fifteenth Amendment protects the right to register and to vote, but it has never held or even suggested that vote dilution violates the Fifteenth Amendment." (citing *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 334 n.3 (2000))).

To the extent that *United States v. Marengo County Commission*, 731 F.2d 1546 (11th Cir. 1984), suggests otherwise, the Supreme Court has subsequently rejected that opinion's interpretation of its precedent. *See Reno*, 528 U.S. at 334 n.3. In *Marengo County*, the Eleventh Circuit found that a majority of the Supreme Court concluded in *City of Mobile v. Bolden*, 446 U.S. 55 (1980), "that the Fifteenth Amendment, as well as the

---

[4]     As Plaintiffs have sufficiently alleged that Pleasant Grove's at-large voting method has both a discriminatory intent and effect, their intentional vote dilution claim under Section 2 survives Pleasant Grove's motion to dismiss. *See Johnson v. DeSoto Cty. Bd. of Comm'rs*, 72 F.3d 1556, 1563 (11th Cir. 1996) ("*DeSoto I*") (noting that intentional vote dilution claim under Section 2 requires a showing of both discriminatory intent and discriminatory results).

Fourteenth, protects not only against denial of the right to vote but against dilution of that right as well." 731 F.2d at 1555. But the Supreme Court has since clarified that *Bolden* does not stand for that proposition and noted that the plurality opinion in *Bolden* actually supports the opposite conclusion. *See Reno*, 528 U.S. at 334 n.3 ("[N]ot only does [*Bolden*] not suggest that the Fifteenth Amendment covers vote dilution, it suggests the opposite."). Thus, Plaintiffs' Fifteenth Amendment claims against Pleasant Grove are due to be dismissed. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (noting that prior Eleventh Circuit precedent is no longer binding when it has been "undermined to the point of abrogation" by a "clearly on point" Supreme Court decision).

## V. Conclusion[5]

For the reasons stated above, the Defendants' Motion to Dismiss (doc. 14) is due to be GRANTED in PART and DENIED in PART. Defendants' Motion to Stay (doc. 16) and Motion to Strike (doc. 27) are due to be TERMINATED as MOOT. Defendants Jerry Brasseale, William Bullion, James Crumpton, Kenneth Hatfield, Philip Houston, and Paula Johnson will be dismissed from this action. Plaintiffs' Fifteenth Amendment claim against

---

[5] Because Defendants' Motion to Stay asked the Court to stay discovery pending resolution of this Motion to Dismiss, the Motion to Stay (doc. 16) is due to be terminated as moot.

Defendant Pleasant Grove will also be dismissed. Plaintiffs' Voting Rights Act and Fourteenth Amendment claims against Defendant Pleasant Grove remain pending. Defendant Pleasant Grove will have ten (10) days from the date of this Memorandum of Opinion to answer Plaintiffs' Complaint. A separate Order consistent with this Opinion will be entered.

**DONE** and **ORDERED** on April 2, 2019.

_____
L. Scott Coogler
United States District Judge

194800